IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MITCHELL L. NICHOLS,           )
                               )
    Petitioner,                )
                               )
v.                             )   CIVIL ACTION NO. 09-0291-WS-N
                               )
MICHAEL J. ASTRUE, Commissioner)
of Social Security,            )
                               )
    Respondent.                )

ORDER

Plaintiff, Mitchell L. Nichols, brings this action seeking review of a final decision of the Commissioner of Social Security denying his claim for disability and SSI benefits. The parties have waived oral argument (docs. 17, 22) and have consented to the exercise of jurisdiction over this action by the undersigned Magistrate Judge (doc. 21). This action was referred to the undersigned on January 29, 2010 to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73. (Doc. 22)

Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Specifically, judicial review of the administrative decision is limited to three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga.1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence

1

supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir.1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir.1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir.1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir.1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir.1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir.1991). In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir.1995); Walker, 826 F.2d at 999.

Plaintiff makes the following three claims of error on appeal: (1) that the ALJ was required to give controlling weight to the opinions of plaintiff's treating physician; (2) that the ALJ improperly disregarded the opinions of multiple examining physicians, including plaintiff's treating physician and two physicians chosen by the Commissioner, but, rather than send plaintiff to be evaluated by other consultive examiners, reached medical determinations on her

2

own, and (3) that the ALJ failed to perform a function-by-function analysis of plaintiff's limitations in determining his residual functional capacity.

Facts[1]

Plaintiff initially applied for disability benefits on December 1, 2006, and for SSI on September 26, 2006. After being denied at the administrative level, he requested a hearing before an Administrative Law Judge. The hearing was held on September 22, 2008, and the ALJ entered an unfavorable decision on December 1, 2008.[2] Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 21, 2009, and the ALJ's decision was adopted as the Commissioner's final determination.

Plaintiff claims that he became disabled on February 2, 2004. Although plaintiff concedes that he worked after this time, the ALJ determined that he did so at a level below 'substantial gainful employment' and thus that he was not rendered ineligible as a result of that employment. The ALJ found that plaintiff suffered from cervical degenerative disc disease, depression, a knee injury with complaints of pain, lung lesions/pneumonia, and memory and concentration deficits. She determined, however, that only the plaintiff's cervical degenerative disc disease and depression constituted severe impairments.[3]

*Plaintiff's' Medical History*

---

[1] This statement of facts is drawn from the briefs of the parties as well as from the administrative record.

[2] The transcript of the hearing held before the ALJ shows that the ALJ held open the record to allow plaintiff's counsel to update certain medical records. It appears that plaintiff's counsel submitted additional records from Singing River Hospital and Coastal Family Health.

[3] Nonetheless, the ALJ included limitations from some of the other complaints in her residual functional capacity analysis. Plaintiff does not challenge the determination that these complaints are nonsevere.

Plaintiff was injured on the job on February 2, 2004, and sought treatment. In May, 2004, an MRI showed large disc protrusions at C5-6 and C6-7. Plaintiff underwent surgery on his cervical spine to correct the problem, and had bolts put in his neck, but continued to suffer pain related to this injury. The record includes treatment notes from Dr. Ruben Belen from 2004 onward, showing that plaintiff continued to complain of neck pain and received narcotic pain medication and muscle relaxants to reduce his pain. Dr. James Crumb also treated plaintiff during this time and, in August 2004, imposed the following restrictions: full-shift, light work, with the ability to frequently lift 15 pounds and occasionally lift 30 pounds. Plaintiff returned to work, on light duty, in August or September 2004.

Between December 2004 and May 2005, Dr. Crumb's examinations showed that plaintiff's right arm strength was 'stable' and that he had a normal gait, no neurological deficits, well-controlled pain, and normal affect, concentration and thoughts. In December 2005, at plaintiff's request, Dr. Crumb reduced his limitations to "unrestricted" use of plaintiff's left arm. In March 2006, Plaintiff stated that he could care for his own needs, run errands and walk outside of his home. Later in 2006, Dr. Crumb noted that plaintiff could care for his own needs, cook and clean his home, and that plaintiff had controlled pain and normal concentration, affect and appearance. He also noted that plaintiff was working, but maintained his amended restrictions.

Plaintiff underwent a nerve conduction study in 2006 which showed moderate carpal tunnel syndrome and chronic right C-6 radiculopathy. Dr. Belen's notes, through November 2006, reflect that plaintiff had no neurological deficits or depression. On August 14, 2007, Dr. Belen completed a Clinical Assessment of Pain form relating to the plaintiff in which the doctor

4

stated his opinion that plaintiff's pain would distract him from adequately performing daily work and other activities, that physical activity would greatly increase his pain and cause distraction from, or total abandonment, of tasks, and that his pain and/or drug side effects could be expected to be severe and to limit plaintiff's effectiveness due to distraction, inattention, drowsiness, etc. Dr. Belen stated his belief that plaintiff would need additional orthopedic evaluation and possibly further surgery.

At the Commissioner's request, plaintiff was seen on February 15, 2007, at the office of Kim M. Zweifler, Ph.D., for a psychological evaluation.[4] The evaluation reflects that plaintiff stated that he cared for his personal needs, watched television, listened to the radio, performed some household chores and occasionally "walk[ed] around." On examination plaintiff was oriented and had an appropriate mood and affect, normal speech, "ok" concentration, intact memory, normal thought processes, borderline intelligence, and limited judgment and insight. Dr. Zweifler diagnosed depression and opined that plaintiff could manage his own funds. Plaintiff's records, including the report of Dr. Zweifler, were then evaluated by Donald Hinton, Ph.D., who opined that plaintiff had "mild" mental limitations and no episodes of decompensation. In her decision, the ALJ ruled that Dr. Zweifler's report was entitled to little evidentiary weight, because it provided little useful information regarding claimant's mental functioning.

---

[4] Counsel for plaintiff submitted a written objection (tr. 152) to this exhibit on the grounds, in sum, that plaintiff never met with Dr. Zweifler, but rather was examined by another person, apparently a Licensed Professional Counselor, Jerry M. Mott, M.S., who also signed the evaluation. Counsel objected to Mr. Mott's credentials, pursuant to 20 C.F.R. § 416.1016(e), which addresses consultive examinations.

In December 2007, plaintiff was evaluated by Dr. William Crotwell III for an orthopedic consultation. At that time plaintiff indicated that he cooked, drove locally and walked three to four blocks. Dr. Crotwell found that he had limited range of motion in his neck, but had "great" musculature and tone, full strength and normal grip strength. Dr. Crotwell opined that plaintiff could possibly engage in medium, but definitely light and sedentary work, and could work a full eight hour shift. However, the ALJ determined that Dr. Crotwell's report was entitled to little evidentiary weight because he did not have the claimant's neurosurgery treatment records or diagnostic test results.[5]

In 2008, plaintiff worked, but stated that he suffered severe neck and shoulder pain. He exacerbated his neck pain in a fight in March 2008, and in April, injured his foot on the job.[6] In August 2008, plaintiff's neck was examined and was normal, and he had full arm strength and no neurological deficit. Dr. Belen prescribed medication for neck pain and nervousness.

In September 2008, plaintiff was evaluated by counselor John Marshall III, M.S. Plaintiff was oriented and had average attention and concentration, intact memory, average persistence, and normal speech and thoughts. Mr. Marshall found that plaintiff had "moderate" and "marked" mental limitations and four or more episodes of decompensation due to pain and

---

[5] Plaintiff's counsel submitted a written objection (TR. 150) to this exhibit, and asked the ALJ to give Dr. Crotwell's opinion no weight on the basis that Dr. Crotwell was not provided with fundamental orthopedic records, including the original MRI, any records of the cervical surgery and follow-up, subsequent epidurals and nerve conduction studies. Based on the objection, the ALJ admitted the evidence but limited her reliance on Dr. Crotwell's opinions.

[6] A recitation in a medical record–apparently based on the doctor's understanding of a statement by the plaintiff, indicated that the injury occurred while plaintiff was using a jackhammer. At the hearing, plaintiff denied doing so. Nonetheless, the ALJ found that plaintiff had used a jackhammer, and found such use undermined plaintiff's complaints of pain.

medication side effects. He concluded that plaintiff "appear[ed] to be able to learn most any physical task, but any motion is painful and he will be unable to adequately perform work day activities." The ALJ stated only that he considered and rejected Mr. Marshall's opinions.

*Plaintiff's Testimony Before the Administrative Law Judge*

At the hearing before the ALJ on September 22, 2008, plaintiff testified that he had neck and right arm pain, as well as bilateral hand pain with numbness and weakness. He stated that Dr. Belen told him that he would require another surgery for his neck and possibly carpal tunnel release surgery to help with his hand problems; he also stated that he would have to hire an attorney to reopen the workers compensation case to pay for the additional surgeries, and had not done so.

Plaintiff further testified that he had tried to find work picking up and carrying things, but that no one would hire him because of his neck. However, plaintiff conceded that he had not actually applied for work and had not looked "real hard" for work other than what he had already done. Dr. Belen tried to dissuade plaintiff from trying to work before the additional surgeries because he would just hurt himself further.

Plaintiff stated that while the medication helped with the pain; on mornings when he could not get up and moving around, they would get him through the day, but he would get tired and grumpy and have to go back to bed. Plaintiff further testified that he suffers from knots in his shoulders and neck (which interfered with an attempt to perform the nerve conduction study), which are helped by the medication but they make him feel sick, tired and weak. Although plaintiff stated that the medications are sometimes worse than the pain, it is his belief that he could not stay out of the emergency room without them.

7

When on his medication, plaintiff reported that he could stand for four or five hours, but that his right hand was very weak and that he could not pick up much with the left hand because it would still pull on his neck. He indicated that more than half of the time he would have a "bad day" and have problems moving or would have to stay in bed. He indicated that he could walk approximately one block at a time, but that movement made his neck hurt and the pain radiated down to his hips. He has received two nerve blocks which wore off and he injured himself worse while the pain was at bay.

Plaintiff stated that he could sit for about an hour before the pain started in his back. He could hold a coffee cup in his right hand at waist level ,but if he tried to raise it, he would drop it. His hands are numb but he can button his own buttons, unless his hands cramp up. Plaintiff further stated that he lives with a girlfriend who performs much of the housework, including cooking, sweeping, laundry, shopping, and his mother and other people help out as well. He is unable to do yard work, but can feed himself, and can sometimes make himself a simple snack. He has memory and concentration problems, especially when on his medication, to the point that he sometimes can not remember the day and "can't concentrat[e] on much of nothing."

Plaintiff has problems with both knees, and has had surgery on both. One surgery was when he was 18-19 years old. His right knee was broken in a car accident and he had his knee cap removed. He also had the cartilage removed from his left knee after a sports injury. They cause him pain and difficulty rising, and sometimes the pain interferes with his sleep. He also had pneumonia or a lesion in his lungs, as well as a cyst and scar tissue; he had been to the doctor the week prior to the hearing and was told that they needed to do a third CAT scan to be sure of the diagnosis, and had not ruled out cancer. Plaintiff testified that he has held off on

treatment because of financial difficulties. He also testified that Dr. Belen informed him that his limitations, particularly on lifting, had dropped when he was hurt again, and that a test that indicated he could lift 5 pounds with his right hand was done shortly after a nerve block when he was not in the usual amount of pain.

## Analysis

In working her way through the five-step sequential evaluation,[7] the ALJ found that claimant met the insured status requirement for disability benefits through December 31, 2010; that claimant had not engaged in substantial gainful employment since the alleged onset date of February 2, 2004; that claimant's cervical degenerative disc disease and depression were 'severe' impairments, but that his remaining impairments did not meet that standard; that claimant did not meet a listing; that claimant has the residual functional capacity to perform light work, with certain limitations; that he was unable to perform his past relevant work as a welder, pipe fitter, or carpenter; that he was 37 years old on the date of alleged disability; that he has a limited education; that transferability of job skills is not material because he is "not disabled"; and that there are jobs available in significant numbers in the national economy that he can perform and thus is not disabled. Plaintiff's challenges in this appeal focus on the determination of plaintiff's limitations and residual functional capacity and the determinations that he can work at the light level and thus is not disabled.

In finding plaintiff was able to perform light work and was not disabled, the ALJ rejected the opinions of plaintiff's treating physician that stated plaintiff suffered severe pain and that he was unable to work due to his impairments. Based on these findings, plaintiff argues that the

---

[7] *See* 20 C.F.R. 404.1520(a) and 416.920(a).

ALJ's ruling violates the Commissioner's own regulations and related precedent. *See* 20 CFR § 404.1527(d).

Social Security Regulation 20 CFR § 404.1527(d) defines how the Administration weighs medical opinions:

> § 404.1527 Evaluating opinion evidence
>
> (d)   How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we will consider all of the following factors in deciding the weight we give to any medical opinion.
>
>> (1) Examining relationship.
>> (2) Treatment relationship.
>> (3) Supportability.
>> (4) Consistency.
>> (5) Specialization. And
>> (6) Other factors.

The regulations further state that the Commissioner will generally "give more weight to opinions from ... treating sources," and "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2), 416.927(d)(2).

> The ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997). "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.2004). Accordingly, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir.1985).
>
>> "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440. However, where an ALJ articulates specific reasons for failing

10

> to accord the opinion of a treating physician controlling weight and those reasons
> are supported by substantial evidence, there is no reversible error. Moore [v.
> Barnhart], 405 F.3d [1208]at 1212 [(11th Cir. 2005)].

Carson v. Commissioner of Social Security, 2010 WL 1544734 at *2 (11th Cir., April 20, 2010).

In the case at hand, the ALJ explained her rejection of the opinion of Dr. Belen, who had a long-standing treating relationship with the plaintiff, as follows: "Dr. Belen's opinions regarding the claimant's physical abilities in Exhibit 11F are consistent with light to sedentary work and generally consistent with the residual functional capacity finding above. The undersigned rejects, however, Dr. Belen's opinion that the claimant experiences disabling pain and is unable to sustain work ... because such extreme limitations are not supported by Dr. Belen's treatment notes or evidence of record concerning the claimant's activities of daily living." (Tr. At 27). No other explanation is given. Although elsewhere in the decision the ALJ summarizes the medical records, she does not relate those entries to her rejection of Dr. Belen's opinion.

The Commissioner's deference to a treating source, reflected in the regulations quoted above, require an ALJ to "clearly articulate the reasons for giving less weight," to the doctor's opinion. The court can not agree with the Commissioner's position that this explanation is sufficient. To the contrary, the evidence in the record does bolster Dr. Belen's opinion, and Dr. Belen's opinion is neither conclusory nor inconsistent with his own treatment records. For example, Dr. Belen continued to prescribe narcotics and muscle relaxers to the plaintiff for several years, despite plaintiff's complaints about how those medications affected him. In addition, plaintiff's complaints of pain to Dr. Belen, as well as to his other providers through this period, are consistent, and are consistent with the physical injuries from which it is

11

uncontested that he suffers. See Phillips, 357 F.3d at 1240-41 (11th Cir.2004)(instance of proper rejection of treating source). The record before the agency lacked medical evidence on plaintiff's pain level which the ALJ found credible and which contradicted the opinion of plaintiff's treating physician. While the ALJ listed evidence from the record which she found undermined the credibility of plaintiff's testimony concerning his pain, that evidence, with few exceptions, can not be read to wholly contradict Dr. Belen's opinion as to the level and effect of plaintiff's pain.[8]

Because the court finds that the ALJ's failure to articulate a sufficient reason for not only giving the opinions of Dr. Belen less-than-controlling weight but for discounting them completely requires remand, the undersigned does not address the remaining issues raised by plaintiff in this appeal.

## Conclusion

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence, nor is it decided according to the proper legal standards, and is therefore REVERSED and REMANDED pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall (1) reconsider Plaintiff's complaints of disabling pain, as well as

---

[8] SSR 96-2p, paragraph 7, states that "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." The ALJ not only found Dr. Belen's opinion was not controlling, but discounted it completely on the basis of this ill-defined reasoning. No explanation was given for taking this more drastic approach to the medical opinion of a treating source with such a long-standing relationship with plaintiff. The rejection of this evidence and of two consultive examinations may also indicate a failure of the ALJ to obtain a complete record and one which is sufficient to justify her decision; additional consultive examinations may have been needed. However, in light of the court's determination that the case is to be remanded, the court does not reach this subsidiary issue.

Plaintiff's physicians' documentation of such complaints, and if she decides to discredit such allegations, should support such a decision with substantial evidence;(2) reconsider the weight Dr. Belen's opinion is entitled and, in the event the ALJ accords it less than controlling weight, should clearly articulate her reasons for doing so; (3) conduct any further proceedings deemed LJ necessary in light of any new findings.

DONE this the 20th day of May 2010.

        /s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten **[now fourteen]** days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added) A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

14